All the Justices concurring.

---

ST. JOSEPH & DENVER CITY RLD. CO. v. JOEL RYAN.

1. RAILROAD COMPANIES; *Must furnish Necessary Depots.* It is the duty of a railroad corporation to furnish reasonable depot facilities for the accommodation of the public in the matter of transportation and travel.

2. —— *Contracts; Distance.* A contract in contravention of this duty of furnishing reasonable depot facilities is against public policy, and void; and a contract not to have or use a depot within three miles of a given point is such a contract.

### Error from Doniphan District Court.

ACTION by *Ryan* to recover damages for a breach of the contract set out in the opinion, *infra.* *Ryan* alleged that he made the conveyance, and fulfilled on his part all the conditions of said contract, but that the *Railroad Company*, in violation of said contract, and in disregard of its duty in that regard, had erected and used and was still using a depot on the line of its road at a place called Severance, which was within a mile and three-quarters of the depot located in accordance with the terms of said contract, and that at their said depot at Severance "the said *Railroad Company* take up and set down passengers, and take in and discharge freight, and that at said place mails are regularly taken on and thrown off and exchanged, and trains upon defendant's railroad going east and west stop daily for the convenience of passengers, and shippers of freight, to plaintiff's damage, $15,000." The *Railroad Company* admitted that it was a corporation, that the *plaintiff* executed the contract as stated in the petition, and denied all other averments of the petition. The action was tried at the March Term 1872 of the district court. Verdict and judgment for plaintiff for $6,500. New trial refused, and the *Railroad Company* brings the case here on error.

*Doniphan & Baldwin*, for plaintiff in error:

1. The action for damages on account of the use of a depot at Severance cannot be maintained. The instrument is not a covenant; and such a contract, if made, would be illegal and against public policy. The instrument is only signed by Ryan, and there is no agreement on the part of the company to stand by or perform the terms of the deed. The estate granted by it is only a conditional right of way over the lands so long, and no longer than the Company complied with the terms of the grant. The words used in this deed create only a conditional estate. (2 Washb. Real Prop., pp. 2, 3, 13.) The deed of Ryan declares, "This conveyance

is made upon the express conditions following." Then fol-
low the conditions to establish a depot at Ryan's, etc., and
closes by declaring, "upon the breach of any of the above
conditions by said railroad company or assigns, then this con-
veyance shall be *utterly void."* The petition charges that
these express conditions have been broken in using a depot
at Severance. Grant this as true; then the conveyance leaves
us no room for doubt. The grantor, by the terms of his
grant, has fully and amply determined the consequences and
declared the estate "utterly void." Will the courts attempt
to make a contract for the parties, or place a construction on
the deed entirely at war with the express provisions of the
instrument itself? It was competent for the parties to con-
tract that the happening of the events stated, or one of them,
should render the grant void. If this was a contract at all,
it has the legal effect stated therein; and the moment the
Company built or used a depot in less than three miles of the
land deeded, the grant was "utterly void," and the parties
were placed in *statu quo.* The plaintiff in error claims that
Ryan cannot recover in this action because the grant is *ipso
facto* void. But we submit that when the court below admit-
ted evidence to go to the jury upon a conveyance that was
utterly void (by the use of a depot at Severance,) tending to
show that Ryan had sustained damages in consequence of the
use of said depot, it erred, and made a contract for the par-
ties entirely different from the one found in the instrument
sued on. The court below seemed to have regarded the con-
dition that no depot should be used within three miles of
Ryan's Station, not only as a *condition* but as a *covenant* on
the part of the defendant that it would use no such depot.
We hold that such a construction of the instrument is at war
with the word and spirit of the deed itself, and in opposition
to all the elementary authorities and adjudged cases upon the
subject. 2 Kernan, 121; 11 Paige's Ch., 414, 416, 426; 11
N. Y., 376; 25 Iowa, 379.

2. Is not the construction of the conveyance as contended
for by Ryan in contravention of public policy? Would it

not violate the objects for which the charter was granted, to prohibit the use of a depot within three miles of Ryan's Station, if the public necessities should demand? The franchises in the charter of the road were conferred by the sovereign power of the state for the benefit of the public; and all powers, rights and duties must be discharged and exercised so as not to be prejudicial to the interest of the public. This doctrine is recognized in *Fuller v. Dame,* 18 Pickering, 472. Did Ryan insert the provision in his conveyance prohibiting the company from having or using a depot in three miles of his land to advance the *public* interest, or was it to enhance his *private* gain? This condition fixed this depot, not where the public good required, but where his private cupidity suggested. Another remarkable feature about this conveyance is, that the depot should be located on his land, not where the corporation might desire, or the public interest require, but wherever his caprice, malice, or love of gain might dictate. 45 Mo. 212; 4 Denio, 349; 4 Comst., 456; 5 Denio, 434; 6 Johns., 194; 9 Ind., 430; 2 Ohio St., 519; 11 Ohio St., 349; 4 Ohio, 419; 21 Barb. 361.

3. The contract is in restraint of trade: 21 Wend., 157, 166; 10 Barb., 641; 9 How., 335. A corporation cannot, by contract, limit the franchises granted by law, where such limitation affects injuriously the public interest. By its charter this company had the general power to locate their depots. (Laws of 1857, §13, p. 197.) This power could not be delegated to Ryan without express action by the corporation.

*John J. Ingalls, Sidney Tennent,* and *Nathan Price,* for defendant in error:

1. The Railroad Company claims that the contract does not give Ryan a right of action, because the clause providing that the company shall not keep or maintain a depot within three miles of the one located upon Ryan's land, was not a covenant, and consequently Ryan has no right of action if they violate it. If Ryan had been buying something of the

railroad company, there would be some force in the argument; but this was not the case.   Ryan says to the company, I will give you a right of way provided you will pay me so much money, and place and maintain a depot on my land, and not put another within three miles of it.   This proposition the company accept, pay the money, take the land, and afterward violate the contract by keeping another depot within a mile and-a-half of the one on Ryan's land.   Viewed from this standpoint, which the court must see upon an examination of the contract is the correct one, all of plaintiff's argument and authorities upon the question of covenant fall to the ground.

2.  Plaintiff claims that the contract was one against public policy, and consequently cannot be enforced.   In general, all questions of policy are for the legislature and not for the courts.   Especially is this, the case when the legislature has acted upon the question.   Now in this case the legislature has acted upon the subject.   It gave plaintiff its · charter, without stipulating where any of its depots should be located; and again, subsequent to the granting of the charter, and prior to the making of the contract sued on, the legislature adopted other laws prescribing the duties of railroad companies, and in none of them do they in any manner prescribe where the railroad company shall keep its depots.   The court must presume that the legislature intended to let this company put its depots just where it pleased, and if such was the intention of the legislature it is not the province of the courts to interfere.   The contract being valid, and plaintiff having violated it, the defendant clearly had a right of action; the only question is, in what form?.  What did the parties *intend?*   That is what the court is to ascertain, viewing the language by the light of all the surrounding circumstances. 2 Parsons on Contr., 3d ed., p. 11, § 3.

The opinion of the court was delivered by

BREWER, J.: The defendant in error brought his suit in the district court upon the following instrument of writing, claiming damages for the breach thereof:

"KNOW ALL MEN by these presents, that for and in consideration of one hundred dollars in hand paid by the St. Joseph & Denver City Railroad Company, a corporation organized under the laws of the state of Kansas, I do hereby give, grant, bargain and sell unto said Railroad Company the right of way through the following described lands, situated in the county of Doniphan and state of Kansas, to-wit: the northeast quarter of section nineteen, the northwest quarter of section nineteen, and the northwest quarter of section twenty-nine, all in township three, of range twenty; said right of way to be on the route at present surveyed through said land, and commonly known as the Wolf River route; and said right of way to be eighty feet through said lands, except where the depot hereinafter mentioned shall be located on said land, and at the place of locating such depot said right of way shall be one hundred feet wide for a sufficient distance for all switches and side-tracks required for the use of said depot.

"This conveyance is made upon the express conditions following: Said railroad shall, immediately on the completion of their railroad through said lands, establish a depot for freight and passengers on said land, and shall keep up and maintain the same for all time; and shall not at any time have or use any other depot within three miles of said depot; and said Company shall, where the route of said railroad passes through timber on said lands, under the directions of the grantor herein, clear said timber off the track of said railroad and pile the same up off the right of way for the use of the grantor in this deed; and the said grantor and the members of his family shall have the right to travel in the cars of the said Company free of charge, for all time to come, from the residence of the grantor to Elwood, in Doniphan county, and from said Elwood to said residence; and that so much of the right of way of the route as is known as the Highland route as is not included in this deed, shall by said Railroad Company be abandoned to the grantor herein; and the grantor herein shall have the right to locate the depot hereinbefore mentioned on either of the tracts of land herein conveyed, provided such selection or location shall be on a tangent of at least 700 feet in length.

"Upon the breach of any of the above conditions by said Railroad Company or assigns, then this conveyance shall be utterly void. It is understood and agreed that the grantee and their assigns shall build all cattle-guards and crossings

required by the grantor in the use of the lands aforesaid, through which said track passes. Signed, sealed this 24th of August, 1869.        JOEL RYAN. [SEAL.]"

The case turns upon the validity of this instrument. Can a railroad company in consideration of the right of way, bind itself to build a depot on the grounds through which the right of way is obtained, and not to have or use any other depot within a given distance? Is a contract not to build or use a depot within certain limits a valid and binding contract? Railroad companies are private corporations; yet they are declared to be *quasi* public agencies, and their roads to subserve to a certain extent public purposes, so much so that the public may be taxed to aid in their construction. (*Leavenworth Co. v. Miller*, 7 Kas., 479.) It would seem to follow that the public has a right to say that they shall not be permitted, though private corporations, to make any contract which would prevent them from accommodating the public in the matter of transportation and travel. The contract sued upon is a continuing one, to last through all time; and if valid, no matter what may be the changes of population, or the demand of business, the company is restrained from having or using other than the one depot within the limits of six miles. That at the time of the contract there was but a scanty population in the vicinity, cannot affect the question, for no one can foresee where or how population may center in the future. Eighteen years ago, no one could foretell the present size and population of Atchison, Leavenworth, or Topeka; yet like contracts, if valid might to-day operate to deprive each of them of the facilities of depots. And if the present amount of population does not affect the question, can a railroad company contract not to furnish any given community through which its road passes, with the conveniences of a depot, and not to use one if furnished by others? Can the Missouri Pacific Railroad contract with the town of Delaware, not to build or use a depot at Leavenworth? or with the town of Lawrence, not to build or use a depot at Leavenworth; or with the town of Sumner, not to

build or use one in Atchison? Can it thus contract to force trade and travel out of its natural and selected channels? The question is an important one, and deserves, as it has received, careful consideration at our hands. That railroad corporations do by the construction and management of their roads alter materially the course of trade and travel, is obvious. That in their management they come far short of accommodating the public, or supplying its necessities, no one will question. In the road they build, the route they select in the purchase of the right of way, the location of depots, the running of trains, the amount and character of the rolling-stock, in short, in the whole organization, construction, management and machinery of railroads, the corporators have an eye to private interests and pecuniary gain. There is nothing in this peculiar to railroad corporations. All corporations, private in their nature, do the same. Self-interest controls all their operations. It so happens that self-interest and the interest of the public, as a general rule, demand the same course of action. The more the wants of the public are supplied, the greater the use it will make, and thus the greater the gains of the corporators. Hence there are not many cases in the books in which the contracts of railroad corporations have been declared void as against public policy. Railroad corporations are, as we have seen, public agencies, and perform a public duty. They are agencies created by the public, with certain privileges, and subject to certain obligations. A contract that they will not discharge, or by which they cannot discharge those obligations, is a breach of that public duty, and cannot be enforced. They are under obligations to use the utmost human sagacity and foresight in the construction of their roads to prevent accidents to passengers. A contract that they will not use such sagacity and foresight, certainly cannot be upheld. They are under obligations to employ skillful and competent engineers to manage their engines, and other competent employees to superintend and take care of the running of their trains. A contract that they will not employ such agents and servants,

is certainly void. They are bound to furnish reasonable facilities for the transportation of freight and passengers, both as to the quality and quantity of cars and coaches and the number of trains, and a contract not to furnish such facilities will not be tolerated. So, though one train a day with one freight car and one passenger coach might be at present amply sufficient to do all the business between two given places, yet a contract never to run but the one train a day with the one car and coach, could not be upheld, for the necessities of trade and travel are varying, and it is the duty of the company to adjust its capacities and facilities for business to these varying necessities. Upon the same principle it is the duty of a railroad company to furnish reasonable depot facilities. The number and location of the depots, so as to constitute reasonable depot facilities, vary with the changes and amount of population and business. A contract to leave a certain distance along the line of the road destitute of depots, is in contravention of this duty. The case of *Fuller v. Dame*, 18 Pick., 472, is in principle very much in point. In that case a note was declared void whose consideration was an agreement successfully carried out to induce a corporation to locate its depot in the vicinity of certain lands of the payee of the note. In giving the opinion of the court, (page 482,) Chief Justice Shaw makes these very pertinent suggestions: "It is obvious that if one large landholder may make a valid conditional promise to pay a large sum of money to a stockholder, or influential citizen, on condition that a work of great public improvement may be so fixed as to enhance the value of his estate, all other great landholders may make like promises, or similar conditions, and great public works which should be conducted with a view to the public interest and to the just rights of those who make advances for the public benefit, would be in danger of being overlooked and sacrificed in a mercenary conflict of separate local and private interests." See also the case of the *Pacific Rld. Co. v. Seeley*, 45 Mo., 212; *State v. H. & New Haven Rld. Co.*, 29 Conn., 538.

We have considered this case as it was considered in the

court below, as showing a contract on the part of the plaintiff in error not to build or use a depot within certain limits, for the breach of which damages were awarded by the jury. It would not be proper for us to inquire at present in what condition the rights of the parties are left by this decision. The judgment will have to be reversed and the case remanded, leaving each party to take such subsequent steps for the enforcement of his rights as may be judged best.

KINGMAN, C. J., concurring.

VALENTINE, J.: I concur in the reversal of the judgment in this case, and I concur in all that is said in the syllabus.