ATCHISON, TOPEKA & SANTA FÉ RLD. CO. v. THE BOARD OF COMMISSIONERS OF JEFFERSON CO., *et al.*

1. RAILROAD CORPORATION, *Right to Benefits of Ch. 90, Laws of 1870; Subscription by Township.* Where a railroad company is chartered and organized under the laws of the territory of Kansas, which provide that, after $50,000 have been subscribed to its capital stock, and ten per cent. actually paid, and a certificate thereof filed in the office of the secretary of state, the corporators may organize, and "open books for further subscriptions, requiring payments or installments from time to time," *held*, that such corporation has the right to accept the benefits of the provisions of chapter 90, laws of 1870, entitled "An act to enable municipal townships to subscribe for stock in *any* railroad, and to provide for the payment of the same," notwithstanding this subscription is to be paid in the bonds of the township, and notwithstanding the bonds are not to be issued until the railroad shall have been completed through the township voting the bonds, or to such point in the township as may be agreed upon in the terms of submission to the voters.

2. STOCK IN RAILROAD CORPORATION, *Voted and Subscribed by Township; Compliance with Conditions by Railroad Corporation; Duty of Commissioners.* Where a proposition is submitted to the voters of a municipal township, under chapter 90, laws of 1870, to take stock in the name of the township in a railroad corporation, and three-fifths of the electors voting

favor the subscription and the issue of bonds, and thereafter the sub-
scription is made, *held*, that the subscription is valid, and the county
commissioners are bound to issue bonds of such municipal township,
after a full compliance on the part of the railroad corporation with the
terms and conditions of such submission, notwithstanding the proposi-
tion of submission contains a condition to be performed on the part of
the township, relating to a transfer of its stock in the corporation, which
is a *nullity*, when such condition, by the terms of the submission, is sub-
sequent to the subscription and the issuance of the bonds.

3. ,SUBSCRIPTION BY TOWNSHIP, *When not Void.* A subscription to the
capital stock of a railroad corporation by a municipal township, in ac-
cordance with the terms and conditions of chapter 90, laws of 1870, is
not void because it is conditional upon the completion of the railroad
through such township, and through or adjoining a large and growing
village in the township, and the erection of a depot at or near such vil-
lage, where it apparently is manifest that the condition is in furtherance
of the interests of the corporation, and for the benefit and accommoda-
tion of the public in the matter of transportation and travel.

4. SUBSCRIPTION BY TOWNSHIP, *When Not to be Avoided.* Where a propo-
sition of submission to take stock in a railroad corporation is adopted
by the voters of a municipal township, at an election called in pur-
suance of chapter 90, laws of 1870, and thereon a subscription is duly
made, and .the proposition submitted contains a condition that if the
county becomes a stockholder in the corporation, or issues bonds to it
under any subscription, the subscription of the township is to be null
and void, *held*, that such township subscription is not avoided by the
action of the corporation to enforce a pretended subscription of such
county and obtain the county bonds therefor, when, on final hearing of
the suit, the so-called subscription of the county is held invalid for want
of power on the part of the subscriber to make it, and no bonds are ob-
tained thereunder.

## Original Proceedings in Mandamus.

ON the 15th of March, 1877, an alternative writ of man-
damus, on behalf of *The Atchison, Topeka & Santa Fé Railroad
Company*, plaintiff, was issued out of this court, directed to
*The Board of County Commissioners of the County of Jeffer-
son, in the State of Kansas*, and J. W. Farris, O. W. Glynn
and George A. Potts, county commissioners of said county of
Jefferson, and D. B. Baker, county clerk of said county, de-
fendants, commanding them as such officers respectively, that
immediately after the receipt of said writ they should receive
and accept from the said plaintiff, certificate or certificates of

full-paid stock of the capital stock of the plaintiff, to the amount of forty thousand dollars, as theretofore tendered by the said plaintiff, for, in behalf and in the name of the said township of Grasshopper Falls (now the township of Delaware); and that upon the receipt of the same, they cause to be duly issued in the name of the said township of Grasshopper Falls (now the township of Delaware), and deliver the same to the said plaintiff, in payment for the capital stock aforesaid, the bonds of said township of Grasshopper Falls (now the township of Delaware), in the sum and to the amount of forty thousand dollars; said bonds to be signed by the chairman of said board, attested by the said county clerk, under the seal of said county of Jefferson, in accordance with the terms and conditions of the order of submission, the election held, and the subscription made, as hereinbefore stated, or that they show cause, etc. On the 13th of April, 1877, the defendants appeared and answered, showing cause. The case was duly submitted February 5th, 1878, and the subjoined opinion was filed on the 21st of December, 1878.

*Ross Burns,* and *J. G. Waters,* for plaintiff.
*Keeler & Gephart,* and *Louis A. Meyers,* for defendants.

The opinion of the court was delivered by

HORTON, C. J.: This is a proceeding in mandamus, brought originally in this court, to compel the issue of forty thousand dollars of the bonds of the township of Delaware (formerly Grasshopper Falls), Jefferson county, in payment of a subscription of a like amount of the capital stock of the plaintiff. The vote on the question of subscribing this stock and issuing these bonds was taken under the provisions of chapter 90, laws of 1870, and was had on the 11th day of July, 1871. A canvass of the votes showed that the whole number cast at said election was 393, of which number 291 were cast for subscribing the stock and issuing the bonds, and 102 against. Afterward, in pursuance of the proceedings had, the board of county commissioners of Jefferson county ordered the county

clerk to make such subscription in the name of Grasshopper Falls (now Delaware) township; and on December 4th, 1871, the county clerk of the county subscribed for $40,000 of the capital stock of the plaintiff, on behalf of said township, and delivered such subscription to an attorney of the plaintiff, by whom it was delivered to the general manager of the railroad, and by him handed to the treasurer of the company. After completing the railroad in accordance with the terms of the order of submission, on January 5th, 1877, at a meeting of the board of county commissioners of said Jefferson county, the plaintiff presented to the board an affidavit showing a full compliance on the part of the plaintiff with all the terms and conditions submitted at the election of July 11th, 1871, and then tendered to the board for Delaware township $40,000 of the full-paid capital stock of the plaintiff for the subscription, and demanded from the board the issuance and delivery to it of $40,000 of bonds in the name of said township, in payment of said subscription. This matter was taken under advisement till a meeting on February 16th, 1877, when the board refused to accept the stock, or issue the bonds, for the reason that the members were not satisfied that the plaintiff was lawfully entitled to the bonds of the township, and declined to hear testimony offered by the plaintiff, because no evidence was presented on the part of the township, and no authority existed to compel the attendance of witnesses for the township to investigate and determine the matter. On March 15th, 1877, this proceeding was instituted to obtain the bonds.

The defendants made several defenses to the issuance of the bonds and the granting of a peremptory writ in this case, and we shall consider these objections in their order.

I. It is contended that the plaintiff never had the power to accept of, or become a party to, the assumed contract of subscription. The argument is that, as the railroad company was chartered and organized under a territorial act, approved February 11th, 1859, which conferred the power on the corporators, after $50,000 had been subscribed to the capital

stock of the company, and ten per centum actually paid to the grantees therein named, and a certificate thereof, from a majority of them, filed in the office of the secretary of the territory, to open books for further subscription, requiring payments or installments from time to time, that the plaintiff could take no subscription upon which such requirement could not be made at any and all times when the needs of the company should require it; and as the bonds voted were not to be issued until the railroad had been completed through the township voting them, the subscription was in conflict with the charter, the act of the company in attempting to accept the same in excess of the power conferred, and the whole transaction void. We do not see any force in the argument pressed upon us, that this subscription was *ultra vires* on the part of the plaintiff. Sections 17 and 18 of the original charter are as follows.

"SEC. 17. When the citizens of any county or city in this territory are desirous of subscribing to the stock of said company, the citizens of such city or county are authorized to purchase, subscribe or hold shares, not exceeding $100,000 in amount, as shall be determined by the county court or common council making such subscription, in all respects as stock owned by individuals; and such railroad company may dispose of bonds, issued for such stock by said county or council, upon such terms as may be necessary.

"SEC. 18. Subscriptions to the stock of said company may be made in land in the same manner as in cash, and said company are hereby authorized to hold, purchase and convey the same as they may deem for their interest."

By these sections, subscriptions from counties and cities were payable in bonds; and subscriptions could also be made in land. Thus, the original charter clearly provided for the payment of stock in other modes than in money. Chapter 90, laws of 1870, expressly authorized subscriptions to be made as was done in this case. The law is entitled "An act to enable municipal townships to subscribe for stock in *any* railroad, and to provide for the payment of the same." Either this law is not applicable to the plaintiff, as it gives municipal townships authority to subscribe for stock and

pay in bonds, while the original charter only contemplates cities and counties making subscriptions in this manner, or else its terms and provisions may be accepted by all the railroads in the state, including the plaintiff, that wish to take advantage of the powers conferred. There is no prohibition in the original charter preventing townships being authorized by the legislature to subscribe for stock and pay in bonds, and the provision therein for city and county subscriptions does not by implication tend to prevent the legislature from granting such power if willingly exercised by the corporation. The legislation is paramountly for the benefit of the railroad company, not for its injury, destruction, or any limitation of its franchise. The question of the impairment of a contract by legislation hostile to the interests of the corporation is not raised. If the corporation seeks the advantages of the law allowing municipal townships to aid the work in which it is engaged, it does so willingly, and because its interest runs in that direction. No force is used; no compulsion can be effected. The issue of railroad-aid bonds has been sustained by the declarations of the legislative and the judicial departments of the state, and as the legislature has authorized subscriptions of this character to *any* railroad, we find nothing in the original charter of the company preventing it from accepting subscriptions on the conditions of the law of 1870. The terms and conditions of the subscription having been made in compliance with said act, with the consent of the corporation, it cannot be said to be unauthorized and void. The plaintiff had the right to accept any additional benefits provided by after-legislation which did not defeat the purposes of its charter; and certainly it had the power to accept the benefits which directly promoted these purposes. The provision in the law that the bonds were not to be issued until the railroad had been fully completed through the township voting them, or to such point in said township as was agreed upon, was a wise measure, and one which in all cases should be strictly adhered to. In this connection, we may add that, under all the authorities, when a

subscription is received after the organization of a company, different principles apply than when made prior thereto.

After organization, a party is in existence with whom the subscriber can stipulate, and then his conditional promise can work no fraud on the other stockholders or co-subscribers.

II. Objection is made to the terms of submission on the ground that the proposition contained a clause providing that the township on the completion of the railroad from Topeka to Parnell station, in Atchison county, would assign and transfer to plaintiff its stock in the corporation for the consideration of one dollar. It is said that this condition was intended to make and did make the whole contract a donation of $40,000 of bonds to the plaintiff; that while it was nominally a subscription to stock coupled with a contract to sell, it was really a contract to donate $40,000 to the plaintiff to build its railroad and depot within the township. At most, this stipulation in the contract of subscription was a condition subsequent to the issuance of the bonds. It was subsequent, under the proposition of submission, to both the subscription and the liability to pay. Whether the township has the power to comply with this condition, we need not decide. That may be a matter of future discussion and determination. We do not intimate that this condition can be enforced, or that it is valid, and purposely leave the question open. In this case the plaintiff is not seeking any stock, nor the transfer to it of stock. It is seeking the delivery of the bonds in payment of stock already subscribed. If the condition for the sale of the stock is void, being subsequent, it leaves the subscription valid and binding. If the condition is not illegal, then it does not avoid the subscription.

III. It is further urged that the subscription is void because by its terms the plaintiff was required to locate and construct its road through the city of Grasshopper (now Valley) Falls or through a tract of land adjoining, and erect a depot thereon. It is said that this condition is contrary to public policy, as it is alleged that it allowed the location of the road to be controlled by bonds, bribes and gifts. It is

undoubtedly true that any contract that a railroad company will not discharge or by which it cannot discharge the obligations it owes to the public, is a breach of public duty and cannot be enforced. (*St. Jos. & D. C. Rld Co. v. Ryan*, 11 Kas. 602.) The question is, does the agreement to locate the road at or near to Valley Falls, and the erection of a depot thereon, contravene this well-settled doctrine? Ch. 90, laws of 1870, under which the subscription was made, provides: "That the commissioners shall not cause the bonds to be issued until the railroad shall have been completed through the township voting such bonds, or to such point in said township as may be conditioned in the bonds." Within the law the plaintiff had the right to contract that the railroad should be constructed through Grasshopper (Delaware) township. No testimony is presented showing that running the road through or adjoining Grasshopper (Valley) Falls, caused the plaintiff to deflect in any way its road from a direct route between Topeka and Atchison, and for aught that appears in the case, such location was adopted to best subserve the public interest. Certainly the erection and maintenance of a depot at or adjoining Grasshopper (Valley) Falls, a large and growing village, would greatly tend to accommodate the public in the matter of transportation and travel. There is no agreement not to build other depots, nor any condition expressd or implied by which the public convenience is sacrificed to individual interest. The condition for the location of the road and the building of a depot, being within the power of the plaintiff and in furtherance of the interests of the corporation, and also seemingly for the benefit of the public generally, is valid.

IV. It is next insisted that said subscription cannot be lawfully asserted, for the reason that, according to the terms thereof, the county of Jefferson and said township could not both be stockholders in the plaintiff's corporation, and that if the plaintiff received any bonds of said county under any subscriptions, then the subscription of the said township was to be null and void, and as the plaintiff's corporation, prior

to the commencement of this action and after such subscription by the said township, attempted to enforce a subscription from said county of Jefferson for one hundred and fifty thousand dollars and obtain county bonds therefor, that the plaintiff elected that the county should be a stockholder in the company rather than the township, and is estopped from enforcing the subscription of the township. The facts are these: In 1868, a vote was taken in Jefferson county on the question of subscribing stock and issuing bonds to the plaintiff, and the canvass by the county commissioners showed a majority in favor of the subscription and the bonds. In September, 1872, the plaintiff commenced an action in this court, alleging that on January 19th, 1868, the county commissioners of that county, by their proper officers, made a subscription in writing for the stock, in accordance with the terms and conditions mentioned in the proposition submitted at said election, and demanded that the county should accept stock itself, and issue therefor $150,000 of county bonds. On final hearing, it was decided that a majority of the *legal* votes cast at said election of 1868 were against making the subscription and issuing the bonds; and the said subscription was held invalid for want of power on the part of the subscriber to make it. This subscription was then canceled, and no bonds obtained thereunder. As the plaintiff has never received from the county of Jefferson any of the bonds of that county, and as such county is not now and never has been a valid stockholder, the action of the plaintiff in having settled by judicial determination the *status* of that county under the attempted subscription, is no bar to this suit, and did not render the subscription of the township void.

The other matters submitted by the counsel for the defendants are of minor importance to these referred to, and constitute no defense. It is unnecessary to specially comment thereon. Under the pleadings and the facts presented, the subscription made in the name of the township is valid, the said township is the owner of $40,000 of the capital stock

of the railroad corporation, and the plaintiff is entitled to $40,000 of the bonds of such township, as stated in the alternative writ of mandamus issued in this case.

The peremptory writ will be granted, and judgment entered for costs against the defendants.

All the Justices concurring.