WILMINGTON, ONSLOW AND EAST CAROLINA RAILROAD COMPANY v. COMMISSIONERS OF ONSLOW COUNTY.

*County Subscription to Railroads—County Bonds—Election—Duty of County Commissioners.*

1. In submitting to the vote of the electors of a county the question of subscription of county bonds in aid of a railroad, a substantial compliance by the county commissioners with Chap. 233, Acts of 1885, as amended by Ch. 89, Act of 1887, is sufficient, if there be no fraud.

2. Where, at such election, a majority of the qualified voters of the county vote for the subscription it is the duty of the county commissioners to issue the bonds.

CIVIL ACTION, commenced by plaintiff on the 7th March, 1893, in the County of ONSLOW, and removed therefrom on notice of the plaintiff to the County of Lenoir for trial, and tried before *Boykin, J.,* and a jury, at November Term, 1894, of LENOIR Superior Court. The object of the action and the contentions of the parties are set out in the opinion of Associate Justice FURCHES. On the trial the plaintiff submitted to a non-suit in deference to the opinion of His Honor that, on the evidence, the plaintiff could not recover, and appealed.

*Messrs. A. M. Waddell* and *N. J. Rouse*, for plaintiff (appellant).

*Mr. M. de W. Stevenson*, for defendant.

FURCHES, J.: This action is for a mandamus to compel defendant to issue to plaintiff $30,000 in coupon bonds, under an Act of the Legislature of 1885, Ch. 223, as amended by the Act of 1887, Ch. 89, in which plaintiff contends that defendant submitted the question under said Acts to the qualified voters of Onslow County, and that a majority of the qualified voters of said County voted in favor of "subscription," thereby authorizing and making it the duty of defendant to issue said bonds to plaintiff. This demand is resisted upon the ground that plaintiff has no right to said bonds, and that defendant is not authorized to issue the same; and defendant alleges that the election held on the 24th day of January, 1888, was irregular, in that, the Act of 1887 required said election to be held within 40 days, which was not done. That it does not appear that 30 days' notice of said election was given, as the law required. That a new registration was ordered, which was contrary to law and therefore void. That a majority of the qualified voters of Onslow County did not vote to issue said bonds, and if they did so vote, it has never been so declared by defendants, and they now refuse so to declare, and to issue said bonds.

It is too clear for argument that defendant has no authority to issue the bonds demanded in plaintiff's complaint, unless a majority of the qualified voters of Onslow County have, by their vote given, in pursuance of law, authority to defendant to do so. Const. N. C., Art. VII, Sec. 7. And on the other hand it seems clear to us, that if a majority of the qualified voters of said County, at an election held under and pursuant to law, have voted for

the issue of said bonds, then it is the duty of defendant to issue the same, and the Court will compel defendant to do so.

Then it is not denied that the Acts of 1885 and 1887, *supra*, authorized the holding of an election, and it is not denied that an election was held under said Acts for the purpose of determining the question whether said bonds should be issued or not. This much is undisputed ground.

But defendant says, although this is true, that said election was held in pursuance of said Acts, it was not held according to the requirements of said Acts. That said Acts required that said election should be held within forty days from the date of the order of defendant, calling the same, and this election was not held within forty days from the date of the order of defendant, calling the same, and is therefore void.

But plaintiff in reply to this says that time was not of the essence; that being the will of qualified voters, and where it is not shown that there was fraud or design in postponing the election, it will not vitiate or make the election illegal and void. 21 Mich., 324; 14 Barb., 259; 23 Ill., 437. That the time mentioned in the act was not mandatory, but only' directory. *Grady* v. *Commissioners*, 74 N. C., 101.

But defendant says, if said election is not void for the reason that it was not held within the time mentioned, there was a new registration of voters ordered, which vitiates and renders said election void, and cites *Smith* v. *Wilmington*, 98 N. C., 343. But, upon examination of this case, we find it is put expressly upon the charter of Wilmington, which provided that there should not be a new registration of voters ordered oftener *than once in every two years*. And it was shown there had already been one registration during that year. While the general law, *Code*,

RAILROAD COMPANY *v.* COMMISSIONERS.

Sec. 2675, which applies to the case now under considera-
tion, expressly provides that the County Commissioners
may order a new registration before any election; and Chief
Justice MERRIMON so states in his dissenting opinion in the
case of *Smith* v. *Wilmington, supra.*

But defendant again says, it is not shown that said elec-
tion had been advertised for thirty days, as the law
requires.    But when defendant admits there was an elec-
tion held under defendant's directions and management, the
law will not be so unjust to defendant, as to presume that
defendant did not perform the duties required by law.
But on the other hand it will presume it did its duty.

But defendant again says, if said election is not void for
any of the reasons above stated, it was necessary that the
commissioners should pass upon and declare the result of
said election; that this has never been done, and they do
not propose to do so, and cite *Claybrook* v. *Commissioners,*
114 N. C., 453, as authority for this position.    But, upon
examination of this case, we find that it holds that if the
commissioners had declared that a majority of the qualified
voters of the town had voted for the subscription, bonds had
been issued and gone into the hands of innocent purchasers
for value, the town would have been bound to pay them,
though *in fact* a majority of the qualified voters had *not*
voted for the subscription.    But it does not hold that
because the commissioners had not declared the result
showing that a majority had voted for subscription, the
election was void.    But, that the commissioners having
failed to declare that a majority had voted for the subscrip-
tion, left it an open "question for the jury to determine"
upon the evidence.    And this case brushes away the straws,
such as that the election was held on the 30th and reported
on the 3rd, that they voted "for subscription," and "against
subscription," instead of voting "subscription" and "no

subscription," as provided in the Act authorizing the election; and that the petitioners styled themselves "voters and tax-payers" instead of "residents and tax-payers" as provided in the Act; and takes a broad catholic view of the whole matter, which goes to the merits of the controversy.

Suppose then we were to try the question as to whether a majority of the qualified voters of Onslow County voted for this subscription, what would necessarily be the result? The plaintiff, upon this point, introduced the following evidence without objection: "The record of the officer of register of deeds of Onslow County, showing the vote of the different precincts, tabulated result, &c., of said election held on the 24th of January, 1888, as follows:—Election held 24th January, 1888, for subscription or no subscription for Wilmington, Onslow & East Carolina Railroad."

"*To The Board of Canvassers* or *the Clerk of the Superior Court of Onslow County* : Abstract of votes cast at an election held for, and Chapter 233, Laws of 1885 (giving returns from each precinct, aggregating, for subscription 935, no subscription 345, with registered voters 1648)."

"*To the Board of Commisstoners for Onslow County* : Having opened, canvassed and judicially determined the original returns of the election in the several precincts in the County, held as above stated, do hereby certify as Chairman of said Board that the above is a true abstract thereof, and contains the number of said ballots cast in each precinct for subscription and no subscription, and the number of votes given in said election for the said purpose, January 26, 1888. (Signed E. L. Frank, Jr., Chairman Board County Canvassers; Hill King, Secretary, *et al.*) I hereby certify that this is a true copy of the original filed in the office of the Clerk of the Superior Court of Onslow County, North Carolina. (Signed E. L. Frank, Jr.,

Chairman Board County Canvassers.) It is admitted that said election was held on the 24th January, 1888."

And the defendant introduced no testimony. Now it seems to us that it was the duty of the Judge trying the case to have instructed the jury that if they believed the evidence, to find the second issue "Yes."

This is assuming that the commissioners had not declared the result of the election of the 24th of January, 1888, and that the case was being tried upon the evidence, under the law as declared in the case of *Claybrook* v. *Commissioners*, *supra*. But it appears to us that a reasonable and fair construction of this evidence shows that the vote was canvassed, the result ascertained and declared, showing that a majority of the registered voters of said county had voted for subscription, and that a majority of the registered voters was a majority of the qualified voters of the county. *Southerland* v. *Goldsboro*, 96 N. C., 49.

We think the object of all elections is to ascertain, fairly and truthfully, the will of the people—the qualified voters. That registration, notice of elections, poll-holders, judges, &c., are all parts of the machinery provided by law to aid in attaining the main object—the will of the voters; and should not be used to defeat the object which they were intended to aid. This being so, it is held that a substantial compliance with the formalities of the statute is all the law requires. 1 Cook on Stock & Stockholders, p. 143; *Railroad* v. *Commissioners*, 21 Kan., 309. And we are of opinion that where there is no fraud alleged, and no design shown on the part of those executing the law, and where it appears that the will of the voters was fairly taken and ascertained, a substantial compliance with the provisions of the statute, under which the election is held, is sufficient.

We have treated this case as if the plaintiff was a tax-payer, or some one interested in defeating the result of this

election. And we have been showing it would be valid against the attacks of such parties. But that is not the case here. The plaintiff is trying to sustain its validity, while the defendant is trying to defeat the plaintiff by alleging its own faults, and thereby trying to take advantage of its own wrong. How far this would be allowed is not necessary for us to say here.

And, not to be misunderstood by this observation, we again repeat what we have heretofore said—That defendants had no power to submit the question of subscription to the voters of Onslow County, outside of the powers given by the legislature. And they have no power to issue the bonds demanded by plaintiff, unless a *majority* of the qualified voters voted for the subscription. But, having the power to submit the question, a substantial compliance with the formalities of the statute in submitting the question to the people, if there was no fraud practiced, and no design in doing so to impose on the people and get them to do what they would not have done if there had been a literal compliance with the terms of the statute, then, a substantial compliance with the terms of the statute in submitting the question is sufficient. And if a majority of the qualified voters of the County voted for the subscription, it is the duty of defendant to issue the bonds.

There is error, and the plaintiff is entitled to have the judgment of non suit set aside, and a new trial. It is so ordered.

New Trial.