No. 21,675.

JAMES A. BAIRD, *Appellee,* v. THE SALINA NORTHERN RAIL-
ROAD COMPANY, *Appellant,* et al.

SYLLABUS BY THE COURT.

RAILROADS—*Subscription Notes—Contract to Locate Depot and Station
on Subscriber's Land—Contract against Public Policy.* A contract
made in consideration of the giving of subscription notes, whereby a
railroad company agrees permanently to establish and maintain on
the subscriber's land a passenger and freight depot and station, stock-
yards, sidetracks, and other shipping facilities, and to refrain from
ever establishing or maintaining similar structures or facilities within
competing distance of the subscriber's land, is void as against public
policy, and is void as against public policy irrespective of the provision
not to establish other stations.

Appeal from Mitchell district court; RICHARD M. PICKLER,
judge. Opinion filed July 6, 1918. Reversed.

*David Ritchie,* of Salina, for the appellant.
*R. M. Anderson,* of Beloit, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for breach of a
contract to locate and maintain a depot and other shipping
facilities. A demurrer to the petition was overruled, and the
defendant appeals.

The contract provided that the railroad company should per-
manently establish and maintain, on described land of the
plaintiff, a passenger and freight depot and station, stockyards,
sidetracks, and other shipping facilities; refrain from ever es-
tablishing or maintaining a depot, station, or siding facilities
between Ash Grove in Lincoln county and the proposed station
in Mitchell county, or within ten miles of the proposed station;
do all in its power to obtain for the proposed station post-office
and express-office facilities, to the end that there might be es-
tablished on the real estate described a town equipped with the
necessary shipping, express, and postal facilities; and at the
time when the proposed station should be completed, run an
excursion train for, or assist in advertising, a sale of town lots,
free of cost. The consideration was the execution and delivery

Baird v. Railroad Co.

to the railroad company of subscription notes in the sum of $10,000, with an option to give notes to the amount of $5,000 and subscribe $10,000 to a bond issue of the railroad company. Should the railroad company default in performing any portion of the contract, it was to pay to the plaintiff the sum of $5,000 as liquidated damages.

The petition set out the contract, pleaded performance by the plaintiff and breach by the defendant, and prayed for the stipulated damages. The contract was void because contrary to public policy, and the demurrer to the petition should have been sustained.

The plaintiff argues that it is not *per se* against public policy to bargain with a railroad company for the location of a station at a particular place; that stations may, of course, always be discontinued when it is proper to do so, and consequently the stipulation for a permanent station may be ignored; and that the admittedly void stipulation not to establish other stations is severable. The plaintiff is not able to point out what part of his subscription was made in consideration of the naked location of a station on his land, with accompanying shipping facilities. On the face of the contract, material portions of the consideration on which the plaintiff made his subscription were that the station should not be discontinued as soon as established, or at any later time, but should be permanent, and that no other station should be located within competing distance. To interpret the contract otherwise would be to make a decidedly different engagement between the parties than that expressed by the instrument. The supposedly legal and the illegal things to be done by the railroad company constituted a unit of performance on its part, just as the plaintiff's subscription constituted a unit of performance on his part, and the entire contract was void.

The court does not agree that the contract would have been valid if it had contemplated no more than the establishing of the station and shipping facilities described. The public has an interest in the location of stations on a line of railroad, with the accompanying facilities for serving the public. That interest is paramount to the interest of stockholders of the railroad company, and the temptation to gratify private greed rather than satisfy public need by selling out railroad

facilities is just great enough that railroad officers and agents ought not to be permitted to expose themselves to it.

The authorities on the subject of the validity of station contracts are not in harmony, and it is not strange that this should be so. On one side transportation by rail is private enterprise, on the other, public service; and the supremacy of the public interest was not always clearly visualized. Indeed, it was often difficult to do so in the early days of railroad building through great areas of undeveloped territory. Public policy as an operative legal principle was not always clearly visualized. Sometimes the statutory privileges enjoyed by railroad builders and the statutory privileges permitted municipal and quasi-municipal corporations in securing the extension to them of railroad facilities, confused the application of the doctrine of public policy to private contracts.

In this state the subject first came up for adjudication in 1872, in the case of *McClure v. Gulf Railroad Co.*, 9 Kan. 373. McClure and many others executed bonds to convey land to the railroad company if it would build its road to Baxter Springs and establish a depot and other buildings there. The railroad company brought suit on McClure's bond. The answer was that the railroad was building in the direction of the south line of the state and toward a terminus in Texas. Two routes, known as the Tar Creek route and the Baxter Springs route, were in contemplation. The Tar Creek route was the more direct, and it would cost about $100,000 more to build, and $20,000 more annually to operate, the Baxter Springs route. In consideration of the donations of McClure and others, the Baxter Springs route was adopted. The statute authorized the railroad company to take and hold voluntary grants of real estate made to aid in the construction and maintenance of its road, and left the railroad company free to choose its route. Building the road to Baxter Springs did not constitute a deviation from any previously designated route, and the court concluded the question presented to the railroad company for decision was simply whether it would build a railroad to Baxter Springs or not. Consequently, it was held that the bond was not void as against public policy. The decision was sound, because the contract sued on belonged to a class of contracts sanctioned by public policy, evidenced by statute, al-

though an unauthorized use might, on occasion, be made of a particular contract of that character.

In the case of *St. Jos. & D. C. Rld. Co. v. Ryan,* 11 Kan. 602, decided in 1873, the syllabus reads as follows:

"It is the duty of a railroad corporation to furnish reasonable depot facilities for the accommodation of the public in the matter of transportation and travel.

"A contract in contravention of this duty of furnishing reasonable depot facilities is against public policy, and void; and a contract not to have or use a depot within three miles of a given point is such a contract."

The opinion was written by Mr. Justice Brewer, with his characteristic breadth and lucidity of thought and simplicity of expression, and has been used to fortify the decisions of many courts whose attention has been occupied by the same subject. The argument concluded with a quotation from the opinion of Chief Justice Shaw in the case of *Fuller v. Dame,* 35 Mass. [18 Pick.] 472, holding a note to be void the consideration of which was an agreement to locate a depot, because if contracts to pay money for the location of great public works or improvements in such a way as to enhance the value of a landowner's estate were indulged, the public interest might be overlooked and sacrificed in a mercenary conflict of separate local and private interests. The convincing reasoning of the principal case applies with equal force to contracts to establish and maintain, and contracts not to establish and maintain, stations.

In the case of *Tucker v. Allen,* 16 Kan. 312, decided in 1876, a deed of land, blank as to the grantee, was delivered to a railroad company, on condition that a depot should be built at a certain place within a stated time, and on the further condition that no depot should be built at another place within a year. The railroad company filled the blank with the name of a person who had performed services for it, and delivered the deed to him. The conditions of the deed were performed. Afterwards the grantors quitclaimed to Allen, who brought suit to recover the land because the conveyance contravened public policy. The decision was that, granting the illegal character of the conveyance, the parties to it were *in pari delicto,* and, the transaction having been fully executed, the law left them and their assignees where it found them.

The writer of the opinion just referred to assumed that the action was not predicated on invalidity of the agreement to build a depot, and assumed that the contract not to build the other depot was illegal. In the course of the opinion the question was asked how any court, without knowledge of the facts, could know whether or not a contract not to build a depot at a particular place would be void as against public policy. In the discussion of the question, stress was laid on the uncertainty with respect to the future needs of any community, and a leaning was indicated toward the view that illegality depends on public detriment in fact, which the court can see and estimate in the particular case. In the Ryan case the uncertainty with respect to the future needs of any community was offered as a reason for not allowing the railroad company to tie its hands by a restrictive station contract. The reason applies to contracts to establish stations, because legitimate public service should not be burdened with any improvident construction, maintenance, or operation. The notion that illegality depends on detriment in fact in the particular case is now generally repudiated. Actual public benefit in a particular case will not relieve from the taint of illegality, the true test being the tendency of contracts of that character to injure the public. (13 C. J. 444.) The decision in the Allen case, however, was perfectly sound, because it was placed on the ground already stated.

In the case of *Northern Kas. Town Co. v. Oswald,* 18 Kan. 336, Oswald agreed to deed land to the town company when a railroad was completed to Hanover and a depot was erected there. Suit was brought on the agreement, and a demurrer to the petition was sustained. The consideration for the agreement did not appear. So far as the petition disclosed, the agreement bore no relation whatever to the determination of the question whether or not a railroad and depot should be built, and the judgment of the district court sustaining the demurrer was properly reversed.

In the case of *A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson Co.,* 21 Kan. 309, suit was brought to compel delivery of township bonds in payment of a subscription to the capital stock of the railroad company. The statute authorized the subscription and bond issue, and further provided that the commis-

sioners should not cause the bonds to be issued until the railroad was completed through the township voting bonds, or to such point in the township as might be conditioned in the bonds. The subscription contained a condition that the railroad company should construct its road through Valley Falls, a city of the township, and build a depot there. The court held that the bonds should be issued. The decision was sound, because the contract belonged to a class which the law expressly authorized the township to make. Public policy, evidenced by the statute, permitted the township to bargain, to its supposed advantage, with the railroad company with respect to the location of the road, and the inclusion of a stipulation to build a depot did not cancel the warrant of authority.

Some state and federal courts hold that because municipal and quasi-municipal corporations may contract for the location of stations, the general public policy of the state is thereby established, and private individuals have the same right. This reasoning is quite fallacious. In one case a public body, the municipal authorities, acting ordinarily on a vote of the qualified electors, is permitted to contract according to the interest of the locality. In the other, private individuals, in furtherance of their own selfish ends, strive to secure special advantages and privileges, without regard to the public welfare.

The decisions noted are all that have been rendered by this court throwing direct light on the subject under consideration. They do not commit the court to a holding that a town-site promoter, like the plaintiff, may secure a lawful contract binding the railroad company to establish on his land a passenger and freight depot and station, stockyards, and other shipping facilities, and the court declines so to hold. It is a mere quibble to speak of establishing structures and facilities of the character described, as distinct from maintaining them, because to establish is to fix with appropriate permanence. The field was open to rival promoters to offer more alluring inducements to the railroad company to champion their town sites, and in such a contest the public interest is too likely to be found trailing after the successful bidder.

The judgment of the district court is reversed, and the cause is remanded with direction to sustain the demurrer to the petition.