CASE 52—PETITION EQUITY—NOVEMBER 27.

# Kimbrough v. Lane, &c.

### APPEAL FROM BATH COMMON PLEAS COURT.

1. CONTRACTS HAVING FOR THEIR CONSIDERATION AN AGREEMENT TO
   STIFLE A CRIMINAL PROSECUTION ARE VOID.—They are against the
   policy of the law, which will not permit an injury to the public to
   be made the subject of private agreements, whereby the redress of
   the public wrong may be hindered or defeated.

2. VICIOUS CONSIDERATION RENDERS CONTRACT VOID.—If any part,
   however small, of the entire consideration of a contract be vicious,
   the whole contract is void.

3. *Every citizen is under an obligation to the public* to abstain from volun-
   tarily placing himself in a position in which it is his pecuniary
   interest to suppress, stifle, or impede a public prosecution.

   The commonwealth has a right to rely upon the individual who
   has received special injury from the commission of a public offense,
   as the special instrument for its ascertainment and punishment in
   the due course of law. (8 B. Mon. 98; 9 B. Mon. 90.)

4. *Where the person injured by a criminal act was himself a member of the
   grand jury* by which the alleged offender was indicted, and entered
   into negotiations with him for indemnity for losses resulting from
   the criminal act, and the prosecution was suddenly abandoned after
   threats that it would be carried on vigorously unless indemnity was
   made, but slight evidence was sufficient to establish an agreement
   to compound the offense, and that the prosecution was set on foot
   to bring the accused and his friends to terms.

5. IN PARI DELICTO — COURTS WILL NOT AID EITHER PARTY. — The
   obligor in such an illegal contract stands in no better position in
   the eyes of the law than the obligee. It will not be enforced, and
   if money is paid thereon the courts will not aid in recovering it
   back, but will leave both parties in the exact position in which they
   have placed themselves.

NESBITT & GUDGELL,  
WM. H. HOLT, . . . . . . . . . . For Appellant,  
A. DUVALL, . . .

CITED

Chitty on Contracts, 515.

2 J. J. Mar. 415, Taylor v. Ashby.

1 Chitty's Pleading, p. 54.

1 Parsons on Contracts, pp. 371–422.

1 Cowen, 249, Erwin v. Saunders.

7 Johnson, 36, Scouten v. Eislord.

8 Kansas, Craft v. Bent, &c.

5 Viner's Abridgment, p. 408.

10 Bush, 234, Trustees of Ky. F. O. School v. Fleming, ex'r, &c.

14 Johnson, 178, Shippey v. Henderson.

APPERSON & REID, }
REID & STONE, . . }　　. . . . . . .　For Appellees,

CITED

Chitty on Contracts, p. 692.

Chitty on Contracts, pp. 47, 48.

3 Bibb, 500, Brown v. Langford.

6 Dana, 91, Donallen v. Lennox.

9 B. Mon. 90, Gardner v. Maxey.

8 B. Mon. 98, Swan, &c. v. Chandler, &c.

4 Dana, 385, Steele v. Curle.　　2 Kent, p. 467.

5 Hill, 252, Steuben County Bank v. Matthewson.

1 Stark Rep. 467, Harding v. Cooper.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

The appellant brought this suit in equity in the Bath Circuit Court against the appellees, George Lane and S. C. Owings, on a note for $3,000, executed by them to him September 18, 1872, which recites that it was given in consideration of a note due by Lane & Brothers to the appellant for $8,600, from which they had been discharged in bankruptcy. He also sought to foreclose a mortgage upon 67½ acres of land given by Owings to secure the payment of the note; and J. A. J. Lee, having purchased the land, was made a defendant.

The defendants answered in substance that George Lane for himself and brothers purchased and received of the plaintiff a number of mules, for which a note was executed to and accepted by him; that afterward the plaintiff came to the said George

and expressed some uneasiness as to the sufficiency of the note, and prevailed on the said George to execute to him a mortgage on a tract of land to secure the debt; that about March, 1872, the plaintiff was foreman of the grand jury of Harrison County, and induced said grand jury to find and present an indictment against said George for obtaining the mules by false pretenses; that he was arrested, and while in attendance at the Harrison Circuit Court for trial on said charge "the plaintiff proposed and agreed to and with said George that if he would pay or secure to him $3,000 he would have the criminal prosecution aforesaid dismissed and that he would not appear as a witness against him (he and his wife were the prosecuting witnesses); and the defendants say in consideration that the plaintiff would procure the dismissal of said prosecution the bond sued on was executed, and the plaintiff did thereupon in consideration thereof abandon the prosecution and procure its dismissal. The mortgage was executed by defendant Owings at the same time, and for no other consideration."

The cause subsequently came into the Bath Common Pleas Court, where a trial was had, which resulted in a judgment dismissing the petition, and this appeal is prosecuted to reverse that judgment.

It is an old and well-settled rule of the common law, that contracts having for their consideration an agreement to stifle a criminal prosecution are void, because they are against the policy of the law, which will not permit an injury to the public to be made the subject of private agreements, whereby the redress of the public wrong may be hindered or defeated. And it is equally well settled that if any part, however small, of the entire consideration of a contract be vicious, the whole contract is void.

Every citizen is under an obligation to the public to abstain from voluntarily placing himself in a position in which it is to his pecuniary interest to suppress, stifle, or impede a public

prosecution. " The commonwealth has a right to rely upon the individual who has received special injury from the commission of a public offense as the special instrument for its ascertainment and punishment in the due course of law. . The particular interest which he may be supposed to feel in bringing the offender to justice is one of the securities on which the public relies, and has a right to rely, for the enforcement of the laws and its own safety; and an agreement by which this interest is turned against the commonwealth is in violation of her rights and policy." (Gardner v. Maxey, 9 B. Mon. 90; Swan, &c. v. Chandler & Phillips, 8 B. Mon. 98.)

That such is the law was conceded in the argument, but it was insisted that the evidence did not show that such an agreement as that set forth in the answer was made.

George Lane and Owings both testify directly and positively that an agreement, in substance the same as that set forth in the answer, was made. This, however, is contradicted by the appellant and two other persons, present at the time the agreement to execute the note and mortgage was finally entered into, who say that the appellant then distinctly said that he could not make any arrangement with Lane by which he would agree to have the indictment dismissed or fail to appear as a witness against him; that the case was in the hands of the commonwealth and would have to be disposed of by the court; that he could in no way control the prosecution and would not undertake to do so. The appellant swore that he did not speak to the commonwealth's attorney on the subject of dismissing the indictment, and the attorney swore that he dismissed it because, after talking with the witnesses, he was satisfied he could not make out a case.

If this was all the evidence in the record upon the subject we should incline to the opinion that the agreement set forth in the answer was not established by the evidence; but there are other important facts which, although they do not prove

that there was an express agreement made at the time the
note and mortgage were given, prove that appellant and Lane
and Owings then understood that the prosecution would be
abandoned if the sum of $3,000 was secured, and that the
execution of these securities was the condition on which he
would not only refrain from a vigorous prosecution through
counsel employed by him for that purpose, but would aban-
don all efforts to bring Lane to trial.    The prosecution was
called September 16th, and set for trial on the 18th of that
month, and attachments were awarded against absent witnesses
for the commonwealth.    On the 18th, after the case was called
for trial, the appellant and his counsel employed to aid in the
prosecution retired with Lane and Owings and one of the com-
monwealth's witnesses to a consulting room in the court-house,
and there, while the question of proceeding with the trial was
before the court, and when, for aught that appears, the common-
wealth was ready to proceed with the trial, the appellant entered
into, or rather renewed, negotiations with Lane for securing a
part of his debt, from which, according to the recital in the
note then given, Lane had been discharged in bankruptcy.
Owings proved, without contradiction by any one, that during
this interview the appellant desired him (Owings) to mortgage
his land to secure the sum of $3,000; that he was unwilling
to do so, but offered to give him personal security, which he
refused to accept; that the appellant then rose from his seat
and said that " that was the last *damned* proposition he intended
to make—that he had Bath County money to prosecute George
Lane with;" and thereupon Owings agreed to execute the
mortgage, and did so.    Appellant agreed, if this was done, to
discharge the attorney he had employed to aid in the prosecu-
tion, and immediately did so ; and he also promised that if
Lane was brought to trial on the indictment he would surren-
der the note and mortgage.

Some of the commonwealth's witnesses against whom at-

tachments were awarded on the 16th, and who were present on the 18th, returned home that day; and no further action seems to have been taken in the case until September 24, 1874, when, on the motion of the attorney for the commonwealth, the indictment was dismissed.

Owings's deposition was taken in December, 1873, and he proved that prior to the execution of the note and mortgage the appellant said to Lane that for $2,500 in cash or $3,000 on time he would dismiss the prosecution. This proposition, he says, was not made in his presence, but Lane and appellant were in a room together and sent for him, and appellant then told him what proposition he had made.

The appellant gave his deposition in March, 1874, but failed to contradict Owings's statement. After the date of the note and mortgage, and before the indictment was dismissed, appellant wrote to Lane as follows: " I think I am fully satisfied that you are co-operating with parties to put me to some trouble to secure the money on the note I hold against you. All I have to say to you is this: I was taken out by several persons the day I was in Owingsville and an effort made to get from me something to commit you to in your county. I evaded all questions. You know what I promised you; but that promise depends upon your action in this matter. If any thing is gotten hold of against you in Bath County you will find things hotter than you have any idea of at this time. Every thing depends upon, not what you can do to refute, but to advance this matter to a final settlement."

These facts leave no room to doubt that at the time the note and mortgage were given it was understood by all parties present that the prosecution would end, so far as appellant was concerned, as soon as the required securities were given; and it is equally clear that it was likewise understood that unless they were given the case would go on as far as it was in his power to carry it on. Why declare that he had made his last propo-

sition, and that he had money to carry on the prosecution, if he did not mean to be understood as intending to carry it on if his demand was not acceded to, and to abandon it if his debt was secured? If he had made no promise, express or implied, to abandon the prosecution, to what promise did he refer in his letter? If the further prosecution was not to be abandoned, why not proceed with it in September, 1872, when, as far as appears, the commonwealth was ready to go on with it?

Considerable stress was laid by his counsel upon the declaration proved to have been made by the appellant at the interview which resulted in the execution of the note and mortgage, that he could not make any arrangement by which he would undertake to have the indictment dismissed, and that he would not fail or refuse to testify if called for that purpose—that the case was in the hands of the commonwealth, and would have to be disposed of by the court.

If this evidence stood alone in the record it might be entitled to some consideration, but when viewed in connection with his former offer to dismiss the indictment for $2,500 in cash, or $3,000 on time, and his declaration at the time when the negotiation was closed that he had made his last proposition and had money to prosecute Lane with, his agreement to surrender the note and mortgage if the prosecution went on, the fact that from that moment it seems to have been wholly abandoned, and his reference in his letter to Lane to the promise he had made, and his covert threat if Lane did not keep the promise made by him, we do not regard the declaration that he did not intend to bind himself to interfere between Lane and the commonwealth as furnishing any evidence whatever that he did not make the promise imputed to him in the answer. It is not necessary that the promise should have been made at the very moment, or even on the same day of the execution of the writings; it is enough if it appears that

such a promise was made at that time, or prior thereto, and that all parties acted in view of that promise, or that it was the inducement which operated upon the minds of the obligors.

The appellant was the person alleged to have been injured by the act for which Lane was indicted, and the public had a right to rely upon the interest which he would naturally feel in having him brought to·punishment in due course of law, and has a right to complain of a contract the direct natural effect of which was to turn that interest against the commonwealth. Such contracts are highly reprehensible when made by one having no other relation to a prosecution than that of being the person injured by the public offense; but when, in addition to being the party specially aggrieved, he is also connected with the origin of the prosecution by having been a member of the grand jury by which the indictment was found, the courts should scan the transaction with jealous vigilance in order to avoid being made the instruments of oppression in the hands of those who, for vengeance or profit, may seek through public prosecutions to extort money to which they are not legally entitled, or for the recovery of which civil process affords them no remedy, and for the further purpose of guarding the instrumentalities provided by law for the detection and punishment of crime from corruption.

No citizen can be put upon trial for an infamous crime except upon the indictment of a grand jury. This has been thought so valuable a safeguard to individuals as to deserve a place in the bill of rights in our constitution. But it will prove a snare instead of a protection if a member of a grand jury, conceiving himself to have been the victim of a felony, may by his own testimony, and, if need be, his own vote and personal influence with his fellow grand jurors, procure an indictment against the supposed criminal, and then, by threats of a vigorous prosecution if his private grievance is not redressed, and promises express or implied that he will forbear

if they are complied with, obtain an enforceable contract for his own indemnity.

Where the person injured by a criminal act was himself a member of the grand jury by which the alleged offender was indicted, and enters into negotiations with the accused for his own indemnity for losses resulting from the criminal act, and the prosecution is suddenly abandoned, especially after threats that it will be carried on vigorously unless indemnity be made, it will require but slight evidence to satisfy the court, not only that there was an agreement to compound the offense, but that the prosecution was set on foot to bring the accused and his friends to terms.

It is urged by some of appellant's counsel that as Lee purchased the land mortgaged by Owings subject to the mortgage, and he will be so much the gainer if the appellant fails in his efforts to foreclose, while Owings and Lane will gain nothing, this ought to have some weight with the court in deciding the question.

It is sufficient to say on this point that the rule of law inhibiting such contracts was not made for the benefit of the obligors therein. They stand in no better position in the eyes of the law than the obligees. The courts will not enforce such contracts, because they are leveled at the safety and repose of society, and are calculated to shield the guilty from punishment and leave them free to prey upon the public. If money is paid upon such a contract, the courts will not aid in recovering it back; they will leave both parties in the exact position in which they have placed themselves.

Though we differ somewhat from the learned judge below in our conclusion from the facts, his judgment is right and must be affirmed.