C. W. HAMILTON AND OTHERS, PLAINTIFFS IN ERROR V. GEORGE THRALL, DEFENDANT IN ERROR.

1. **Contract.: COVENANTS.** As a general rule the covenants of a contract will be considered and held as dependent conditions to be performed by the respective parties, unless it very clearly appears, from the nature of the covenants, they intended them to be independent; and the common intention of the parties must be collected from the entire instrument; and therefore one clause or condition of the contract must be interpreted by the others, whether they precede or follow it.

2. ——: EVIDENCE. When the parties have reduced their con tract to writing, the law presumes that all previous and contemporaneous negotiations and conversations leading to the contract, are merged in it, and cannot be varied by parol testimony.

ERROR to the district court for Douglas county. The action was brought there by Thrall against Hamilton and others to recover the sum of fifteen hundred dollars damages, on account of the alleged failure of said last named parties to comply with the terms of a certain contract entered into by said Thrall with one Horbach, trustee for Hamilton and others, the material portions of which are set forth in the opinion. Thrall had paid his monthly rent of $500 for eleven months until the twelfth month, which he refused to pay, and brought this suit claiming that instead of the property mentioned in the contract costing $25,000, as had been agreed upon, the cost did not exceed the sum of $19,768.92; that his payment of rent had been made before the discovery by him of the non-compliance by the other parties of the terms of said contract, they having in their possession the invoices of the goods and freight bills, and having withheld the same from said Thrall.

Upon a trial of the cause before SAVAGE, J., and a jury, the court gave the following instructions:

1.   The defendants agreed to furnish and rent to the

plaintiff, hotel furniture to the amount of $25,000, the letting being for one year and the rent fixed at $6,000. It is clear from the testimony that the defendants failed to furnish and rent goods to the full value agreed upon. Unless, therefore, the plaintiff has waived his rights under the contract he is entitled to be reimbursed for the loss sustained by such failure.

2. The main question for you to pass upon therefore is, was there such a waiver on the part of Mr. Thrall? If Mr. Thrall knew the quantity and prices of the goods furnished, and so knowing declared himself satisfied with the same, continued to pay rent from month to month without objection, and never intimated any dissatisfaction until near the close of his lease, these circumstances furnish evidence tending to show such waiver, the strength of which is for you to determine.

3. Of course if Mr. Thrall did not know the invoice price of the goods, then his expressions of satisfaction or his failure to object would not constitute a waiver.

4. If you find there was such waiver as above mentioned then your verdict should be for the defendants, who would in that case be entitled to receive the amount of one month's rent under the case, with interest up to the first day of this term.

5. In case, however, you find there was no such waiver the remaining question is as to the measure of the damages to which the plaintiff is entitled. The plaintiff ought to be required to pay as rent only such proportion of the rent agreed upon ($6,000) as the amount of the invoice price and freight of goods furnished and rented bore to the agreed amount ($25,000). For example, and merely for the purpose of illustration, suppose that the invoice and freight of the goods actually furnished and rented was $20,000, or four-fifths of $25,000, then the plaintiff would be required to pay as rent only four-fifths of $6,000. You should bear in

mind, however, in computing the amount which the plaintiff is entitled to recover, that the rent for the last month of the lease, to-wit: $500, has not been paid by the plaintiff. If you find, after applying the principles above enunciated, that the plaintiff is entitled to a greater deduction from his agreed rent than $500, you should return a verdict for the excess, with interest to June 4, 1877. If the deduction which you make from the agreed rent ($6,000) is less than $500, you should find for the defendants for the difference, with interest as above. If such deduction just equals $500 you should find a verdict simply for the defendants.

The defendants requested the court to instruct the jury as follows, which the court refused to do, and defendants excepted.

1. If the jury are satisfied from the evidence that the defendants furnished carpets and furniture, including office safe for the hotel, referred to in the agreement, at the time therein required, which cost by invoice with freight added at least $25,000, then it will be the duty of the jury to find a verdict in favor of defendants.

2. The fact that Mr. Thrall agreed to and did buy from the defendants that portion of the goods ordered for the furnishing of the hotel, commonly considered perishable, would not, under the agreement, require defendants to furnish other goods and furniture to make up the amount of $25,000, exclusive of such perishable goods, provided the entire amount furnished by defendants, including said perishable goods, equaled said sum according to invoice and freight added.

3. If the jury find from the evidence under the instructions of the court that the plaintiff is not entitled to recover on the claim set forth in his petition, then it will be the duty of the jury to find a verdict in favor of defendants for the sum of $500 and interest from October 1, 1874, on account of the item of rent for last month.

4. If the jury are satisfied from the evidence that Mr. Thrall knew, or had the means of knowing, the amount of carpets and furniture furnished by defendants under their agreement, and paid rent under their agreement for eleven months, and made no objection to the amount of carpets, furniture, etc., actually furnished by defendants, as not being sufficient in quantity or value, but continued in possession of the hotel property to the end of his original term of rental without objection, he cannot recover in this action, and the jury will find for defendants, notwithstanding the fact that the carpets and furniture actually provided, exclusive of the perishable goods so called, did not amount to the full sum of $25,000.

The jury returned a verdict in favor of Thrall, assessing his damages at $860.41, upon which, after the overruling of a motion for a new trial, judgment was entered, exceptions taken, and cause up brought by petition in error.

*Redick & Connell*, for plaintiffs in error.

It is hard for us to see how the court can divide the contract; it is not only one entire transaction (and, as we think, plain upon its face), but most clearly expresses the intent of the parties to it.

The fact that Thrall had the invoices in his possession before the goods were put into the hotel, and before he signed the contract; that he checked off the goods in the presence of Pratt and Caldwell, and must have known just what goods had been ordered and were going into the hotel; the fact that he, in the event he kept the hotel, would be liable for the value of the goods under said contract; that when he opened the house he expressed himself more than satisfied; the fact that he, as shown by the record, paid his rent for eleven months without a

murmur or objection; being in the hotel all this time, having every means of knowing the amount of furniture in said hotel, and being a practical landlord of long experience, furnishes overwhelming evidence of the fact that *that* was the true intent of the parties to said contract, and that no objection was made until after a new lease of said premises had been given.

Parsons on Contracts, 2d volume, page 408, in speaking of the construction of contracts, uses this language: " So, too, the situation of the parties at the time, and of the property which is the subject matter of the contract will often be of great service in guiding the construction; because this intention will be carried into effect so far as the rules of language and the rules of law will permit." Now, here were these parties figuring together, one agreeing to lease certain furniture that had been ordered, with the several bills before him, and agreeing to take and buy or advance the money on the perishable articles then ordered; the other party agreeing to buy it back in the event he did not take a second lease of the hotel, together with whatever else of such perishable stuff that he might buy in the interim, etc. Now, could it be possible that it was not the intention of all the parties to the contract, that it was clearly understood just as it was carried out for the first eleven months? and was it not an after-thought on the part of Thrall to make this technical defense to the payment of his rent? Again, on page 501: " It is a rule that the whole contract should be considered in determining the meaning of any of its parts. The reason is obvious; the same parties make all the contract and may be supposed to have had the same purpose and object in view in all of it, and if this purpose is more clear and certain in some parts than in others, those which are obscure may be illustrated by the light of others." 3 Story, 122. *Chase v. Bradley*, 26 Maine, 531. *Merrill v. Gore*, 29 Ind., 346. *Haywood v. Perrin*,

10 Pick., 228.    *Grey v. Clark,* 11 Vermont, 583.   8 Metcalf, 96.

In construing a contract it is immaterial in what part of a contract a particular agreement or covenant is inserted, as the whole contract taken together must determine the true intent of the parties.

A contract may be contained in several instruments, which, if made at the same time, between the same parties, and in relation to the same subject, will be held to constitute but one contract, and the court will read them in such order of time and priority as will carry into effect the intention of the parties, as the same may be gathered from all the instruments taken together. *Newall v. Wright,* 3 Mass., 138.   *Sawyer v. Hammatt,* 15 Maine, 40.

*George W. Doane* and *E. Wakeley,* for defendant in error.

It is admitted that the " carpets and furniture, including office safe," which were furnished *and rented* to Mr. Thrall, did not cost by invoice, with freights added, to exceed $20,086.38.   But it is insisted, on behalf of plaintiffs in error, that the cost of the perishable goods, which were purchased outright by Thrall and paid for by him on the first of October, 1873, amounting to $5,677.30, should be included in the furniture which the trustee agreed to furnish and *rent* to Thrall for one year from October 1, 1873, to October 1, 1874.   In other words, that Thrall made a contract by which he agreed to buy furniture and pay the full cash value therefor, and also that he would pay rent upon the same furniture at the rate of 24 per cent upon its value for one year after his purchase of the same.   The proposition seems upon its face so absurd a one, as not to be worthy of consideration, unless the terms of the contract expressly

require such a construction of it, or the situation of the parties and the attendant circumstances seem to demand it. It is not claimed that the contract itself contains any such provision. On the contrary, the language of the contract is not ambiguous in that respect. It separates very clearly the furniture, which was to be furnished and rented to Thrall, from the perishable goods, all of which is mentioned as already provided, and which was to be purchased and paid for by Thrall, and become his absolute property. It is very evident from the provisions which were made in regard to the leasing of the furniture, and also from those in regard to the sale of the perishable goods, that the two were considered and treated of independently, and rested each upon different considerations. All the provisions of the contract seem to be so clear and unambiguous, and to show so plainly the intention of the parties, that there cannot, as it seems to us, be any difficulty in construing it; and the construction placed upon the contract below was the correct one, and there was no error in the instruction to the jury concerning it.

GANTT, CH. J.

The question upon which this case depends, and upon which it must be decided, is the construction to be given to the written contract between John A. Horbach, trustee for the plaintiffs in error, and George Thrall, defendant in error.

In this contract Horbach, trustee, party of the first part, " agrees to furnish and rent for use, in the hotel known as the Grand Central Hotel in Omaha, carpets and furniture, including office safe, to cost by invoice with freight added at least twenty-five thousand dollars, to be in said hotel and ready for use in time to enable (George Thrall) the party of the second part to comply

with the condition of his lease of said hotel as to time of opening, and to rent the same to the party of the second part for the term of one year from the first of October, 1873, for the sum of six thousand dollars, and to sell the same to the said party of the second part at the end of this lease at cost, less eight per cent. The party of the second part agrees to take the furniture at the rate and for the time specified, and pay therefor monthly in twelve equal payments of five hundred dollars each, and buy the same on the first of October, 1874, at the price above named, provided he takes a new lease of the hotel as specified in the lease aforesaid. The party of the second part agrees that he will buy of the party of the first part that portion of the goods *ordered* for furnishing the hotel, which are commonly considered perishable, consisting mainly of sheets, pillow slips, towels, napkins, and table damask, in A. T. Stewart & Co.'s bill, and the goods *ordered* by said party of the first part from the Meridian Britannia Company, and also glassware *ordered* from J. T. Griffin, and the crockeryware *ordered* from S. Burns, aggregating approximately six thousand dollars, and to pay for the same on the first day of October next. In consideration of this purchase the party of the first part agrees that in the event the party of the second part does not continue the lease of the said hotel according to the provisions of his lease aforesaid, he, the said party of the first part, will purchase of the said party of the second part, at the expiration of the said lease, such of the above described goods, together with such additions as from time to time may be required to be added, as are fit for use in said hotel, at three-quarters of the cost thereof, and pay for the same October first, 1874."

On the part of the plaintiffs in error, it is insisted that all the stipulations in this contract are dependent on each other and must be construed together as one

entire transaction.   On the part of the defendant in error it is contended that the provisions of this contract in regard to the leasing of the furniture, and those in regard to the purchase of the perishable goods by defendant, and their repurchase by the trustee, are independent stipulations, each resting upon different and independent considerations; and that, according to this construction, by the terms of the leasing of the furniture, the plaintiffs covenanted to furnish the hotel with furniture to cost, with freight added, the sum of twenty-five thousand dollars in excess of the value of the perishable goods purchased by defendant.   We think that the construction contended for by the defendant cannot be maintained, because it seems quite clear from an examination of the instrument that the different stipulations are so dependent on each other, that neither one can be effective without the other.   The covenant to purchase perishable goods by the defendant could not be enforced without the lease of the furniture; and the lease of the furniture could not be enforced without the purchase of the perishable goods, for the enforcement of the one stipulation depends upon compliance with the other.

In *Bank of Columbia v. Hagner*, 1 Peters, 465, it is said that :   " Although many nice distinctions are to be found in the books upon the question whether the covenants or promises of the respective parties to the contract are to be considered independent or dependent; yet it is evident the inclination of the courts has strongly favored the latter construction as being obviously the most just; " and even where several instruments are made at the same time relating to the same subject matter, they must be construed together as one transaction to discover what was the true contract between the parties. *Makepeace v. Harvard*, 10 Pick., 298. *Penniman v. Hartshorn*, 13 Mass., 90.

Therefore, " the great object, and indeed the only foundation of all rules of construction of contracts, is to come at the intention of the parties; and any rule which leads us aside from this grand object, is to be disregarded." *Gray v. Clark*, 11 Verm., 385.

And it is a familiar principle in the construction of contracts that the common intention of the parties must be collected from the entire contract; that is, one clause or condition must be interpreted by the others in the same contract, whether they precede or follow it. The maxim is *ex antecedentibus et consequentibus fit optima interpretatio*.

Another rule is that when the parties have reduced their contract to writing, the law presumes that all the previous and contemporaneous negotiations, and conversations leading to the contract, are merged in it, and cannot be varied by parol testimony. *Coffing v. Taylor*, 16 Ill., 470. *Stevens v. Cooper*, 1 John. Ch., 429.

In the light of these principles, the contract must be construed. Then from an examination of the contract as one entire transaction, it seems clear that the leading purpose of the parties was to have the hotel supplied with furniture to the value of at least twenty-five thousand dollars, and that this amount of furniture was ordered before the contract was executed. The trustee acting for the plaintiffs, agreed to furnish and rent for use in the hotel, furniture to cost by invoice, with freight added, not less than twenty-five thousand dollars; the language of the contract clearly indicates that this was the extent of the covenant to furnish goods, and also that these goods were then ordered, for the defendant agreed to " buy that *portion* of the goods *ordered* for furnishing the hotel (referring to the goods mentioned in the first clause of the instrument) commonly considered perishable," aggregating approximately the value of six thousand dollars; and at least some invoices of goods are specially referred

to by the names of the persons from whom they were purchased. But it is further stipulated that in case the defendant shall renew his lease of the hotel, the trustee will then sell to him the remainder of the goods ordered at cost, less eight per cent; or that in the event he shall not continue his lease of the hotel, then the trustee will purchase from him the perishable goods sold to him, and such additions as from time to time may be required to be added, as are fit for use in the hotel, at three-quarters the cost thereof, and pay for the same October 1, 1874. Therefore, when we view this instrument as one entire contract, with conditions dependent on each other, and take into consideration the situation of the parties, the risks incurred in the use for which the goods were furnished, and the fact that the defendant did voluntarily pay the rent for eleven months, it seems clear that the common intention of the parties as collected from the entire transaction is, that in consideration of the several conditions to be performed by the trustee, the defendant agreed to pay the rent stipulated to be paid by him.

It is only necessary to further observe that, according to the views expressed in this opinion, the court below erred in giving to the jury the instructions excepted to, and in refusing to give those asked by the plaintiffs in error. The judgment must be reversed, and the cause be remanded.

REVERSED AND REMANDED.