Wilson, J.
This suit, like that of McIntyre v. The Board of County Commissioners of El Paso County, ante, p. 78, grows out of the proposed removal of the courthouse of El Paso county to another site in Colorado Springs from that at present, used. It involves, however, different questions and principles. In this, the plaintiff claims the right to enjoin thq attempted change, because of the fact that he was the owner of, and conveyed to the county, certain lots embraced in the present site, and, as a part of the consideration therefor, the county commissioners at the time entered into a contract with him that the lots so conveyed, together with adjoining lots then owned by the county, should be used as the site *91 for the county courthouse. The allegations of the complaint, so far as necessary to a proper understanding of the issues presented and necessary to be determined, are as follows:
“ 3. That in 1878 said county purchased lots 31 and 32 in block 82 in Colorado Springs for courthouse purposes, constructed a building thereon, and has ever since been using same for courthouse.
“4. That thereafter, the county, wishing to enlarge its courthouse site, purchased six other lots adjoining said lots 31 and 32, making a block of ground 200 feet by 190 feet, facing Nevada avenue on the east, Kiowa street on the north and having 20 foot alleys on the south and west.
“5. That the plaintiff owned an undivided half interest in two of the six lots which he sold to El Paso county on June 3, 1892, and conveyed by warranty deed.-
“ 6. That at the time plaintiff sold these two lots to the county, he was the owner of, and ever since has been the owner of, three lots immediately south of the said courthouse site facing Pike’s Peak avenue and Nevada avenue, having brick buildings situated thereon for store rooms and office rooms.
“ 7. That in addition to the sum of ten thousand dollars ($10,000) paid plaintiff by El Paso county for his half interest in said two lots, it was stipulated and agreed between plaintiff and El Paso county that as a part of the consideration which plaintiff and his co-owner were to receive for said two lots, said two lots were to be used, with all other lots constituting said courthouse site, for a site on which to erect a county courthouse for said county, and that said county would thereafter erect on said site a courthouse building to cost not less than two hundred thousand dollars ($200,000) which agreement written into the deed is as follows :
“ ‘ And also, for a further consideration of the agreement between the parties hereto, for themselves, their heirs, legal representatives and assigns that the premises hereby conveyed shall be used by the party of the second part only as a *92 part or parcel of the site or location for a county courthouse for El Paso county and the ground in connection therewith, and that the said courthouse to be erected upon said site or location shall cost and be of the value of not less than two hundred thousand dollars ($200,000) when completed, and that the erection thereof shall be commenced within five years from the date thereof, and the same completed within such reasonable time as the finances of the said El Paso county may reasonably justify. * * * And the said party of the second part by accepting this deed for itself and its assigns covenants and agrees to each and every one of the reservations, conditions and agreements aforesaid. * * * To have and to hold the same forever * * * subject, nevertheless, to the conditions, reservations and agreements herein above named and set forth according to the true intent and meaning thereof.’
“ 8. That the said conditions and covenants embodied in said deed were material and valuable to the plaintiff as a part of the consideration for his interest in said lots, by reason of his being the owner of the said lots on Pike’s Peak and Nevada avenues immediately south of the said courthouse site.”
The prayer was that the county commissioners be restrained from attempting to change the courthouse site from its present location to the proposed one, and from selling or attempting to dispose of the present site and from erecting a courthouse on any other site. The defendant county interposed a demurrer upon the ground that the complaint did not state facts sufficient to constitute a cause of action. This was sustained and judgment of dismissal rendered, and from this an appeal was taken to this court.
The only theory upon which the plaintiff would be entitled to the relief which he seeks is that the contract or agreement recited in the complaint was binding upon the county; that it imposed a perpetual restriction on the use of the lots conveyed and the adjoining lots then used for courthouse purposes ; that it perpetually restrained the comity from the *93 adoption of any other site thereafter for a county courthouse, and that it perpetually restrained the alienation of the lots. Without stopping to inquire whether the contract would hear this interpretation, which might be somewhat doubtful, even admitting its validity, it is quite clear that such a contract was, and is, so far as the county commissioners were concerned, ultra vires and void. The statute provides that each organized county within the state shall be a body corporate and politic; and, as such, shall be empowered, among other things, to purchase and hold real and personal estate for the use of the county; to sell and convey any real or personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interest of the inhabitants ; to make all contracts and do all other acts in relation to the property and concerns necessary to the exercise of its corporate or administrative powers. Gen. Stats, sec. 521; Mills’ Ann. Stats, sec. 774.
The powers conferred upon a county are to be exercised by a board of county commissioners. Gen. Stats, sec. 523 ; Mills’ Ann. Stats, sec. 776.
These powers, it is evident and unquestioned, are to be used in such manner as would best subserve the interests of the citizens of the county of which the county commissioners are simply the representatives. The commissioners are the governing body, and by the statute are clothed with full authority to make all contracts which are essential to the management of county affairs, but they are not clothed with the authority to barter away in perpetuity the rights and interests of the public, whatever may be their power as to discretionary acts.
“ Any contract which will disable a public or §ti<m'-public corporation from performing the duty which it has undertaken, or has been imposed upon it, for public weal, * * * is void.” Greenhood on Public Policy, p. 316 et seq.; R. R. Co. v. Ryan, 11 Kan. 602; R. R. Co. v. Taylor, 6 Colo. 1; 11 Pomeroy’s Eq. Jur. § 935; R. R. Co. v. City of Defiance, 167 U. S. 88; R. R. Co. v. Bristow, 151 U. S. 556; Stone v. State of Miss., 101 U. S. 814.
*94 In this last cited case, the court said:
“ But the power of governing is a trust committed to the people of the government, no part of which can be granted away. The people in their sovereign capacity have established their agencies for the preservation of public health and public morals and the protection of public and private rights. These several agencies can govern according to their discretion, if within the scope of their general authority, while in power, but they cannot give away nor sell the discretion of those that are to come after them in respect to matters of the government of which, from the very nature of things, must vary with varying circumstances.”
A county “ is merely a subdivision of the state for the purposes of state government. It is nothing more than an agency of the state in the general administration of the state policy.” Its powers are solely governmental. It does not, like a municipal corporation, possess a complete local government of its own, executive, legislative and judicial. It is clothed with certain executive powers, but these are only such as are specially granted to it by the state. Stermer v. La Plata County, 5 Colo. App. 388.
If a contract like this could be upheld in its legal effect, as contended for by plaintiff, then the rights of the citizens of the county would rest upon a very uncertain and unstable foundation. In the early settlement of county seats, a small area of ground and a small building, only, are usually necessary for a courthouse. In after years, when the town may have increased in wealth and importance and population, public interests might imperatively demand that a different location be selected; that a much larger building be erected; and yet, if the theory contended for in this case be correct, the public would be powerless, because years before some board of county commissioners had made for them a contract which absolutely precluded any chance for future relief. Suppose, too, as occasionally happens, the county seat is. changed in the manner provided by law, what then would be the effect of such a contract ? If its legal effect was to compel the county to *95 perpetually use the ground conveyed for a courthouse, a most anomalous condition of affairs would arise. The contention of the plaintiff cannot be for a moment sustained; it is manifestly contrary to every principle of public policy.
If the contract as construed by plaintiff was, for the reasons stated, and as we hold it to have been, void ab initio, it could not be made valid and binding upon the county by any subsequent acts of the commissioners, either of acceptance or user. The cases cited by counsel do not apply to the question here involved. In this case it is claimed there has been an attempted absolute surrender by the county authorities of the governmental power vested in them by the legislature to be exercised for the public welfare. It is obvious, for reasons too manifest for discussion, that no subsequent acts by them could estop the public from asserting the rights vested in them by the state. The commissioners had only such rights as were given to them by the state for the benefit of the people of the county, and these, without the consent of the supreme governing power, they could not abdicate. They had the discretionary power to select and purchase a site for a courthouse, and to erect the building thereon. Here, the power ended. They had no authority from the legislature, either express or implied, to bind the public to maintain the courthouse upon the site so selected for all time to come. The public were not bound by any alleged acts of ratification of the void contract.
We do not intend to say that the plaintiff is wholly without remedy, and is entitled to no relief whatever. About this, it is not necessary to express any opinion in-this case. We simply determine that he is not entitled to the relief which he seeks, and that he cannot maintain this action. Whatever his rights or remedies may be, he cannot, by reason of his alleged personal contract with the county commissioners in 1892, restrain the county from the removal of the courthouse from its present site.
For these reasons, we think the demurrer was properly sustained, and the judgment will be affirmed.
Affirmed.